G. B. CADWELL *et al.*, Appellants, v. STEPHEN KING, Assignee, Appellee.

1. **County Funds**: DEPOSIT IN PRIVATE BANKS: TRUST FUND. A deposit of county funds by a county treasurer in a private bank under authority from the board of supervisors, and in accordance with the provisions of section 912 of the Code, as amended by chapter 155 of Acts of the Seventeenth General Assembly, is general, and the money deposited. thereby becoming the property of the bank, it cannot afterwards, upon the failure of the bank, be regarded as held in trust.

2. ———: ———: ———: RIGHTS OF SURETIES. The character of such deposit will not be changed by the fact that the bank was insolvent when the deposit was made; nor will the sureties upon the bank's bond to the county treasurer, who have been compelled, upon the execution of a general assignment by the bank, to pay the amount of such deposit to the treasurer, be entitled to any superior equity, as against the general creditor, to the funds in the hands of the assignee, by reason of their signatures to the bond having been obtained through the fraudulent representations of the officers of the bank that the bank was solvent, and that the number of sureties would be considerably larger than the actual number who signed it.

*Appeal from Harrison District Court.* —HON. C. H. LEWIS, Judge.

WEDNESDAY, JANUARY 20, 1892.

ACTION in equity to recover for an amount of money paid by the plaintiffs as sureties for the assignors of the defendant.    On the final hearing the petition was dis-

missed.   The plaintiffs, G. B. Cadwell, Addison Young,
and Charles F. Luce, appeal.—*Affirmed*.

*John A. Berry*, for appellants.

*S. I. King*, for appellee.

ROBINSON, C. J. — In January, 1888, Phineas
Cadwell and William C. Cadwell were partners engaged
in the banking business at Logan, under the name of
Cadwell's Bank, and L. E. Massey was treasurer of
Harrison county.   On the fourth day of the month
named, the board of supervisors of Harrison county, by
a resolution entered of record, authorized the treasurer
to deposit in Cadwell's Bank a sum of money, and to
take security therefor.   Phineas Cadwell and William
C. Cadwell as principals, and the plaintiffs and Stephen
King as sureties, executed to the treasurer a bond in
the sum of forty thousand dollars to secure the deposits
which should be made.   The bond was approved by
the treasurer and the board of supervisors, and there-
after the treasurer deposited in the bank money belong-
ing to Harrison county.   On the ninth day of October,
1888, the members of the bank made to the defendant
a general assignment of all the property of the bank
for the benefit of their creditors.   At that time the
treasurer had deposited in the bank money to the
amount of ten thousand and thirty-five dollars and
sixty-six cents, which had not been refunded.   In
December, 1888, the sureties paid to the treasurer the
amount stated, took up their bond, and, they claim,
were subrogated to all the rights of the county and the
treasurer as against the defendant.   The Cadwells were
insolvent when the bond was given, and when the
assignment was made their liabilities exceeded their
assets to the amount of about twenty-five thousand dol-
lars.   The defendant, as assignee, has in his hands
about fifteen thousand dollars.   The plaintiffs claim
that they were induced to sign the bond by the false

and fraudulent statement of the officers of the bank that it was solvent and in a prosperous condition, and by assurance that the number of sureties on the bond would be considerably larger than the actual number who signed it. The plaintiffs contend that, by reason of the facts stated, they are entitled to have the deposit in the bank treated as a trust fund, and that the amount they have advanced should be refunded before the claims of the general creditors are paid, and ask that the defendant be ordered to refund to them the amount they have paid.

I. A question is raised as to the amount which the resolution of the board of supervisors authorized the

1. COUNTY FUNDS: deposit in private banks: trust fund.

treasurer to deposit in the bank. The petition states it was a "certain sum of money." The resolution was not introduced in evidence, but the plaintiff contends, and some of the statements of witnesses tend to show, that the amount was ten thousand dollars. Conceding that it was as is claimed, we are satisfied from the record that there was no controversy in the district court in regard to the excess, as distinguished from the authorized part of the deposit. The depositing of more money than the resolution specified would not affect the rights of the parties as to that which was authorized, and the excess in this case is so small that the interest of the appellants therein is little more than nominal. Because of that fact, and for the further reason that no question in regard to it was made in the court below, it will not be further considered.

II. Section 912 of the Code, as amended by chapter 155 of Acts of the Seventeenth General Assembly, contains the following provisions:

2. —: —: —: rights of sureties.

"County treasurers shall be liable to a like fine [a fine not exceeding one thousand dollars] for loaning out, or in any manner using for private purposes, state, county or other funds in

their hands, except that whenever permitted by the board of supervisors of their respective counties, by resolution entered of record, they may deposit any such funds in any   *   *   *   private banks in this state, to any amount not exceeding an amount to be fixed by such resolution: providing, that before any such deposit is made, the bank in which it is proposed to make the same shall first file a bond, with sureties to be approved by the treasurer and the board of supervisors, in double the maximum amount permitted to be deposited as aforesaid, and conditioned to hold the treasurer making the deposits of the county harmless from all loss by reason of such deposit or deposits. Said bond shall be filed with the county auditor, and action may be brought thereon either by said treasurer or the county, as the board of supervisors may elect.   *   *   *   But nothing done under the provisions of this act shall alter or affect the liability of the treasurer or the securities on his official bonds.''

It will be observed that the statute does not in terms require the deposits to be special. The term used authorizes ''deposits,'' and may include both special and general deposits. The latter, however, are the more common, and there is no sufficient ground for concluding that the general assembly designed to exclude them from the operations of the act. The banks could derive no benefit from deposits which they are not permitted to use, and could not be expected to perform the labor and incur the expense necessary to prepare and have approved a bond, and incur liability for the safe-keeping and return of money, from which they could derive no advantage, and which would be a source of trouble, vexation, and possibly danger. But if they are permitted to use the deposits, they can obtain compensation which will be an inducement for them to give the required bond and assume the necessary liability. The treasurer can derive no benefit from the deposits, excepting, perhaps, greater convenience

in disbursing funds, and the increased security and diminished danger from loss by robbery or other means, which necessarily results from making deposits which are amply secured. Because of the greater security which results from such deposits, it is in the interest of the public, as well as the treasurer, to permit them to be made. But the intent of the statute would be defeated in a great measure, if not wholly, by construing it to permit only special deposits. The case of *Lowry v. Polk County*, 51 Iowa, 50, was not governed by section 912 of the Code, as amended; therefore, nothing said in that case can be regarded as in conflict with what we have said in this. No claim is made that the deposits were special. Therefore, when they were made, the money deposited became the property of the bank, and the bank became the debtor of the treasurer. *Independent District of Boyer v. King*, 80 Iowa, 500. In the case cited it was held that money deposited by the treasurer of a school district, where the bank received it with knowledge that it belonged to the district, retained its trust character, for the reason that the treasurer had no right to transfer the ownership of the money by making a general deposit; but in this case, as we have seen, the treasurer had the right to make such a deposit, and when it was made the money deposited lost its character as a trust fund.

III. It is said the deposits in question should be treated as a trust fund, for the reason that when the sureties were induced to sign the bond, and when the deposits were made, the bank was insolvent. We do not think that fact affected the character of the deposits of the treasurer. In making them, he relied, not upon his belief in the solvency of the bank, but upon its bond. Therefore, the plaintiffs acquired by assignment or subrogation no right to follow the deposits as a trust fund. The fact that they were induced to sign the bond by the fraud of the bank

gives them no equities, as against the funds in the hands of the defendant, superior to those of the general creditor.

We have found no reason for reversing the judgment of the district court. It is therefore AFFIRMED.